**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JONATHAN MATOS,<br>       Defendant, | **CRIMINAL ACTION**<br>**NO. 04-1800-CBS** |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>RAMON DIAZ,<br>       Defendant, | **CRIMINAL ACTION**<br>**NO. 04-1801-CBS** |

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION**
**July 21, 2004**

**SWARTWOOD, M.J.**

   I.   Nature of the Offense and the Government's Motion

   On June 23, 2004, two separate Criminal Complaints were filed, charging Jonathan Matos ("Mr. Matos")(Criminal Action No. 04-1800-CBS) and Ramon Diaz ("Mr. Diaz")(Criminal Action No. 04-1801-CBS)(collectively "Defendants"), with: (1) knowingly possessing with intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1) and (2) knowingly possessing and carrying a firearm

during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A). Additionally, Mr. Diaz is charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §922(g)(1).

Both Defendants appeared for their initial appearance in this Court in connection with their respective Complaints on June 28, 2004, and at that time, they were both advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing with respect to both Defendants in accordance with 18 U.S.C. §§3142(f)(1)(A)(both Defendants are charged with a crime of violence), (f)(1)(B)(both Defendants are charged with an offense which provides for a maximum penalty of life imprisonment),(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), (f)(2)(A)(both Defendants pose a risk of flight). In addition, the Government also moved for detention of Mr. Diaz on the grounds of 18 U.S.C. §3142(f)(1)(D)(Defendant is charged with a felony and has been convicted of two or more offenses described in paragraphs (A) through (C) of Section 3142(f)(1)(A), or two or more state of local offenses that would have been offenses described in paragraphs (A) through (C) of such section if federal jurisdiction had existed)

On June 29, 2004, a consolidated probable cause/detention hearing was held with respect to both Defendants and at that hearing, Sheila M. O'Hara, Special Agent of the Bureau of Alcohol,

Tobacco and Firearms, testified on behalf of the Government and was cross-examined by counsel for both Defendants.

## II.  Findings of Fact

1.   In November 2003, as a result of information received from a confidential informant ("CI"), Messrs. Matos and Diaz became targets of an investigation concerning the sale of cocaine.  After the investigation commenced, the CI was able to identify Messrs. Matos and Diaz from pictures shown to the CI by New Bedford Police. Additionally, the CI gave New Bedford Police descriptions of automobiles used by Messrs. Matos and Diaz and the telephone number of a known drug dealer who was supplied by Mr. Matos.  As a result of a Pen Register, New Bedford Police discovered that there were approximately 642 phone calls made from that drug dealer to Mr. Matos' cellular phone in a one month period.  Govt. Ex. 4.

2.   From December 4 through February 26, 2004, New Bedford Police conducted surveillance of Messrs. Matos and Diaz.  As a result of that surveillance, New Bedford Police observed Messrs. Matos and Diaz making brief stops at a known drug dealer's address at 11 Park Street in New Bedford, Massachusetts and making brief stops throughout New Bedford in what appeared to be completing street-level drug transactions.  The New Bedford Police also observed Messrs. Matos and Diaz making frequent stops at 11 Spruce Street, 38 Ashley Street and 342 Hathaway Boulevard which is Mr. Matos' residence.  Also, during the course of this investigation, five separate automobiles were observed being operated by Messrs.

Matos and Diaz, four different automobiles being operated by Mr. Matos and three different automobiles being operated by Mr. Diaz. Id.

3.  As a follow-up to their investigation, New Bedford Police learned that some of the automobiles being operated by Messrs. Matos and Diaz were owned or leased by third parties. New Bedford Police then questioned these individuals and learned that they knew Mr. Matos and had either purchased or leased automobiles at the request of Mr. Matos and were reimbursed by him for those purchases/leases. Id.

4.  During the week of January 4, 2004, the CI, at the direction of New Bedford Police, made a controlled purchase of cocaine from Mr. Matos. Id.

5.  On February 26, 2004, as a result of information received from the CI, the New Bedford Police followed an automobile driven by Mr. Diaz and with Mr. Matos as a passenger to Cranston, Rhode Island, where Messrs. Matos and Diaz made a quick stop and headed back to New Bedford. The CI had previously informed the New Bedford Police that Messrs. Matos and Diaz had a drug supplier in Rhode Island. When the automobile containing Messrs. Matos and Diaz arrived back in New Bedford, the automobile was stopped and the New Bedford Police saw a large amount of cash in the area of the front passenger seat. Id.

6.  The New Bedford Police then searched the automobile, discovered a "hide" and seized from that "hide", a plastic bag

containing 17.30 grams of cocaine, a fully loaded .357 caliber Rossi handgun with six rounds of .357 ammunition and $4,000 in cash.  Id.

7.   An ATF Special Agent determined that the .357 Rossi and ammunition seized from the car being operated by Messrs. Matos and Diaz were not manufactured in the Commonwealth of Massachusetts and therefore, had traveled in interstate commerce.  Id.

8.   The following is a summary of relevant portions of Mr. Diaz' criminal record:

| Date | Offense | Disposition |
|---|---|---|
| 11/3/99 | Possession of a controlled substance | 5/16/00, 4-5 years committed |
| 12/6/99 | Possession of a firearm | 5/9/00, 4-5 years committed |
| 12/6/99 | Possession of a controlled substance with intent to distribute | 5/9/00, 4-5 years committed |
| 12/6/99 | Possession of a firearm (second offense) | 5/9/00, 4-5 years committed |

5

III.  Probable Cause

I find that on February 26, 2004, Messrs. Matos and Diaz were in an automobile that contained, in a hidden compartment, 17.3 grams of cocaine, a fully loaded .357 caliber Rossi handgun and a substantial amount of cash.  Therefore, I find probable cause for the offenses charged against both Defendants of knowingly possessing with intent to distribute cocaine, in violation of 21 U.S.C. §841(a)(1) and knowingly possessing and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A).  Additionally, I find that there is probable cause for a finding that Mr. Diaz was a felon in possession of a firearm, in violation of 18 U.S.C. §922(g)(1).

IV.  Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a).  Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the

6

community". 18 U.S.C. § 3142(e). The Supreme Court, in <u>United States v. Salerno</u>, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>Id.</u> at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. <u>See</u> 18 U.S.C. § 3142 (f); <u>United States v. Jackson</u>, 823 F.2d 4-5 (2d Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). <u>See</u> also <u>United States v. Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. <u>See</u> 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or

attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial

officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c). In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary. <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

   (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

   (2) the weight of the evidence against the person;

   (3) the history and characteristics of the person, including:

      (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

      (B) whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

> (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

### V. Discussion of Whether Detention is Warranted

#### A. The Defendants' Histories And Characteristics.

##### 1. Mr. Diaz' History and Characteristics

Mr. Diaz was born on October 13, 1957, in Puerto Rico, where he lived until 1994, when he moved to New Bedford, Massachusetts. Most recently, Mr. Diaz lived with his girlfriend at 38 Ashley Street in New Bedford.

Mr. Diaz was first married in 1975 in Puerto Rico. That marriage ended in divorce a year later. Mr. Diaz was then married a second time in 1980 and has two children from this marriage which ended in divorce in 1984. Both children and Mr. Diaz' former wife live in Puerto Rico. Mr. Diaz has a third son as a result of a relationship eighteen years ago and Mr. Diaz hasn't seen that son for seventeen years and is unaware of his present location. Mr. Diaz was married a third time in 1988 and this marriage ended in divorce in 2003.

Mr. Diaz has a brother, two sisters and a mother residing in New Bedford. Mr. Diaz' father is deceased and Mr. Diaz returned to Puerto Rico in 1999 for his father's funeral.

I have previously reviewed relevant portions of Mr. Diaz' criminal record.

##### 2. Mr. Matos' History and Characteristics

Mr. Matos was born on October 19, 1983, in San Juan, Puerto Rico and moved with his family to New Bedford at age eleven.

Mr. Matos has never been married, but has a five month old child with his girlfriend. For the past six years, Mr. Matos has lived in a condominium rented from one of his uncles at 342 Hathaway Boulevard in New Bedford. Until recently, Mr. Matos lived with his mother at this address, but she left that address when she bought her own residence. Mr. Matos presently lives at this address with his girlfriend and their young child.

Mr. Matos' father lives in the Bronx, New York, his mother lives in New Bedford and he has one brother, who is currently serving a prison sentence.

Mr. Matos has operated his own automobile detailing business for the past three years. Prior to this occupation, Mr. Matos worked part-time at McDonalds and Price Right Supermarket during high school. Mr. Matos has no criminal record except a traffic offense, which was continued without a finding.

B. <u>Nature of the Offense; Weight of the Evidence; Government's Burden; Nature and Seriousness of Danger Posed By Defendants' Release; and Defendants' Risk of Flight</u>

1. <u>Nature of the Offense</u>

Mr. Diaz is charged with being a felon in possession of a firearm, possessing with intent to distribute cocaine and possessing a firearm during and in relation to a drug trafficking crime. Mr. Matos is charged with possessing with intent to distribute cocaine and possessing a firearm during and in relation to a drug trafficking crime. Both Defendants are charged with offenses which could result in a maximum sentence of life and a minimum/mandatory sentence of five years if found guilty of the offenses charged in these Complaints.

2. <u>Weight of the Evidence</u>

Bearing in mind that Messrs. Matos and Diaz are presumed innocent, the Court must nevertheless consider the weight of the evidence against them. Both Defendants were in an automobile which contained, in a hidden compartment, a substantial amount of cash, cocaine and a loaded firearm. Therefore, I find that the weight of the evidence against these Defendants is substantial.

3. <u>Government's Burden</u>

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(B), (f)(1)(C) and (f)(2)(A), as to both Defendants and on the additional ground of 18 U.S.C. §3142(f)(1)(D) as to Mr. Diaz. The Government must prove that

there are no conditions or combination of conditions that would reasonably assure the safety of the community if Messrs. Matos and Diaz were released and the appearance of Messrs. Matos and Diaz as required.

The Government's burden of proof is by:

1. *Clear and convincing evidence* that Messrs. Matos and Diaz, if released, would pose a serious danger to any person or the community, or

2. A *preponderance of the evidence* that Messrs. Matos and Diaz, if released, would not appear as required.

### C.  Rebuttable Presumption

The United States has moved for detention of both Defendants pursuant to 18 U.S.C. §§ 3142(f)(1)(A), (f)(1)(B), (f)(1)(C) and (f)(2)(A).  As to Mr. Diaz, the Government has also moved for detention pursuant to 18 U.S.C. §3142.  The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Messrs. Diaz and Matos were released, or the appearance of Messrs. Diaz and Matos as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case because Messrs. Diaz and Matos are charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act, and because they are charged with possession and carrying of a firearm in

relation to a drug trafficking crime. I have found probable cause exists for the offense charged against Messrs. Diaz and Matos in the Complaint. Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Messrs. Diaz or Matos or the safety of the community if they were released. I further find that neither Mr. Diaz nor Mr. Matos has produced or proffered any credible evidence on his own behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985); United States v. Vires, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Messrs. Diaz and Matos have failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that Messrs. Diaz and Matos pose a danger to the community and a risk of flight.

D. <u>Whether the Defendants Pose A Danger To The Community/Risk of Flight</u>.

1. <u>Mr. Diaz</u>

a. <u>Whether Mr. Diaz Poses A Danger To The Community</u>

The Government has moved to detain Mr. Diaz on dangerousness grounds pursuant to 18 U.S.C. §§3142(f)(1)(A), (f)(1)(B), (f)(1)(C) and (f)(1)(D). Mr. Diaz has been charged with offense for which the maximum penalty exceeds ten years under the Controlled Substances Act and faces a possible life sentence if convicted of

14

the offenses charged in this Complaint. Furthermore, I have previously found that the crime of being a felon in possession of a firearm is a crime of violence which justifies detention pursuant to 18 U.S.C. §3142(f)(1)(A). Additionally, I find that Mr. Diaz has committed two state offenses which would be felonies under federal law within the meaning of 18 U.S.C. §3142(f)(1)(D). Therefore, the Government is warranted in seeking to detain Mr. Diaz on dangerousness grounds.

In May 2000, Mr. Diaz was convicted of drug and firearm offenses for which he received a four to five year sentence. Shortly after being released from prison, Mr. Diaz was in an automobile which contained, in a hidden compartment, cocaine and a loaded firearm. Considering Mr. Diaz' prior record of convictions for drug and firearm offenses and the fact that he was in an automobile that contained, in a hidden compartment, drugs and a loaded firearm, I find by clear and convincing evidence that Mr. Diaz poses a danger to the community and that there are no conditions or combination of conditions that will assure the safety of any person or persons in the community if he were released.

### b. <u>Whether Mr. Diaz Poses a Risk of Flight</u>

Because of his criminal record, Mr. Diaz faces a substantial period of incarceration if he is convicted of the offenses charged in this Complaint. This fact, coupled with the fact that Mr. Diaz has substantial ties to Puerto Rico, which is close to a number of countries to which Mr. Diaz could easily flee, I find by a

15

preponderance of the evidence that Mr. Diaz poses a risk of flight and that there are no conditions or combination of conditions that I could impose to assure his appearance in this Court as directed.

### 2. Mr. Matos

a. Whether Mr. Matos Poses A Danger to the Community

The Government has moved to detain Mr. Matos on dangerousness grounds pursuant to 18 U.S.C. §§3142(f)(1)(A), (f)(1)(B) and (f)(1)(C). Mr. Matos has been charged with an offense for which the maximum penalty exceeds ten years under the Controlled Substances Act and faces a possible life sentence if convicted of the offenses charged in this Complaint. Therefore, the Government is warranted in seeking to detain Mr. Matos on dangerousness grounds and it is not necessary for me to address whether possession/carrying of a firearm in relation to a drug trafficking crime is a crime of violence for purposes of Section 3142(f)(1)(A).

Mr. Matos has no criminal record involving violence, drugs or possession of firearms. However, Mr. Matos has been surveilled over a period of approximately three or four months, conducting what appeared to be numerous street-level drug transactions, he resided in a house that contained surveillance cameras (Govt. Exs. 1-3) and he was in an automobile that contained, in a hidden compartment, 17.3 grams of cocaine, a loaded firearm and a substantial amount of cash. Therefore, considering the totality of these circumstances, I find by clear and convincing evidence that Mr. Matos poses a danger to the community and that there are no

conditions or combination of conditions that I can impose that would assure the safety of any person or persons in the community if he were released.

### b. Whether Mr. Matos Poses a Risk of Flight

Mr. Matos has no record of defaults and has substantial ties to the New Bedford area.  Additionally, Mr. Matos has self-surrendered in this case and has previously been released by the state court in connection with these offenses.  Therefore, I cannot find by a preponderance of the evidence that Mr. Matos poses a risk of flight and therefore, decline to detain him on this ground.

### VI.  Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Messrs. Diaz and Matos be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2.  That Messrs. Diaz and Matos be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Messrs. Diaz and Matos is/are detained and confined shall deliver Messrs. Diaz and Matos to an

authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

### RIGHT OF APPEAL

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

```
                              /s/Charles B. Swartwood, III
                              CHARLES B. SWARTWOOD, III
                              MAGISTRATE JUDGE
```